**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JOSEPH DEKELAITA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-07-0131 |
| | § | |
| BP AMOCO CHEMICAL COMPANY, | § | |
| BP CORPORATION NORTH AMERICA, | § | |
| and BP PRODUCTS NORTH | § | |
| AMERICA, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

This is one of many civil cases arising out of the March 23, 2005 explosion at the BP Products North America, Inc. ("BP Products") refinery in Texas City, Texas.  Joseph Dekelaita, a BP Products employee, was working in a machine shop approximately a quarter mile away from the explosion.  Dekelaita has sued BP Products, BP Amoco Chemical Company, and BP Corporation North America (together, "BP"), asserting negligence, negligence *per se*, premises liability, intentional infliction of emotional distress, gross negligence, and assault.  (Docket Entry No. 43).

BP has moved for summary judgment on the grounds that the undisputed facts show that Dekelaita was not physically injured in the explosion; that Texas law precludes recovery for mental anguish in a negligence case in the absence of physical injury; and that Dekelaita's lack of physical injury precludes recovery on an assault cause of action.  (Docket Entry No. 41).  Dekelaita has responded to BP's summary judgment motion.  (Docket Entry No. 45).

BP has replied, (Docket Entry No. 47), and Dekelaita has surreplied, (Docket Entry No. 51). This court held a motion hearing at which the parties presented arguments. The parties have also filed motions in limine and BP has filed a motion to strike Dekelaita's designation of Paula Allison as a witness.

Based on the motion, response, reply, and surreply; the record; the arguments of counsel; and the applicable law, this court grants in part and denies in part BP's summary judgment motion. Summary judgment is granted as to Dekelaita's negligence, assault by threat, and intentional infliction of emotional distress claims but denied as to his assault by bodily injury claim. The parties' motions in limine and BP's motion to exclude are not addressed in this opinion.

The reasons for the rulings are explained below.

## I.    Background

The summary judgment record includes Dekelaita's deposition taken on December 6, 2007[1] and his affidavit dated March 4, 2008.[2] The record also includes the following: Dekelaita's March 31, 2004 hearing test conducted by BP;[3] Dekelaita's April 2, 2004 visit with his treating physician, Dr. Nancy Eisen, to treat ear pain;[4] Dekelaita's May 2, 2005 annual physical conducted by BP;[5] Dekelaita's November 7, 2005 visit with Dr. Eisen to treat

---

[1] (Docket Entry No. 45, Ex. 4); (Docket Entry No. 41, Ex. A).

[2] (Docket Entry No. 45, Ex. 5).

[3] (Docket Entry No. 47, Ex. E).

[4] (*Id.*, Ex. D).

[5] (*Id.*, Ex. B).

a cold;[6] Dekelaita's February 3, 2006 medical checkup with Dr. Eisen, at which Dekelaita was diagnosed with TMJ syndrome;[7] Dekelaita's April 3, 2006 visit with Dr. Eisen to treat flu-like symptoms;[8] a psychological evaluation of Dekelaita performed on June 26, 2007 by Dr. Arthur R. Tarbox;[9] a psychiatric evaluation of Dekelaita based on a series of assessments performed during June through October 2007 by Dr. A. David Axelrad;[10] and an affidavit from Dr. Axelrad dated March 4, 2008.[11]  Dekelaita has also submitted summary judgment evidence of the findings of an investigation into the explosion conducted by the U.S. Chemical Safety and Hazard Investigation Board;[12] the plea agreement in a criminal proceeding against BP arising out of the explosion;[13] excerpts of testimony from BP personnel in another civil trial arising out of the same explosion;[14] an affidavit from Jennifer Warne, the Project Manager of Human Resources at the BP Texas City refinery, dated July

---

[6] (*Id.*, Ex. A).

[7] (Docket Entry No. 45, Ex. 6).

[8] (Docket Entry No. 47, Ex. C).

[9] (Docket Entry No. 45, Ex. 7); (Docket Entry No. 41, Ex. B).

[10] (Docket Entry No. 45, Ex. 8) (Docket Entry No. 41, Ex. C).

[11] (Docket Entry No. 45, Ex. 9).

[12] (Docket Entry No. 45, Ex. 1).

[13] (*Id.*, Ex. 2).

[14] (*Id.*, Ex. 3).

26, 2007;[15] and an affidavit from Robert Knight, a Claims Administrator at the BP Texas City refinery, dated August 15, 2007.[16]

Dekelaita is a machinist and union steward at the BP Texas City refinery. He has worked at that plant since December 17, 1986, long before BP purchased the refinery from Amoco in 1999. On March 23, 2005, the ISOM unit at the refinery exploded. Dekelaita was working in a machine shop in the refinery's drill press area. He heard a boom, saw lights in the shop start to pop and break, and felt a "wave" or "tremor" come through the shop. He immediately dropped to the ground – as he described it in his affidavit, he "hit the floor" – but promptly got up and ran out of the shop with coworkers. (Docket Entry No. 45, Ex. 5 at 2). Dekelaita immediately sought and received permission from his supervisor to look for his son, who worked at the refinery as a contractor. Within a short time, he learned that his son was safe. Shortly afterward, the machine shop employees were released to go home. Dekelaita left the refinery. He was spared from seeing the horrific immediate consequences of the blast. (Docket Entry No. 45, Ex. 4 at 60–61, 84–91).

Dekelaita returned to work the next day. The union asked him to be on a team organized by BP to investigate the explosion's cause. Dekelaita agreed. The investigation lasted for approximately nine months and resulted in a report. (Docket Entry No. 45, Ex. 4 at 92–93). Many people besides Dekelaita were involved in the various investigations that followed the explosion.

---

[15] (Docket Entry No. 41, Ex. E).

[16] (*Id.*, Ex. F).

4

Dekelaita received his annual physical from BP on May 2, 2005 and received a clean bill of health.  The examining physician noted that there were no physical injuries and no complaints of physical injury.  (Docket Entry No. 47, Ex. B).  Dekelaita visited his personal physician, Dr. Nancy Eisen, on three separate occasions in the year after the explosion.  He sought treatment for a cold on November 7, 2005 and received a complete physical checkup at this appointment.  (Docket Entry No. 47, Ex. A).  The record of that visit shows no complaint of physical problems other than cold symptoms.  On February 3, 2006, Dekelaita saw Dr. Eisen for what her records describe as an "annual checkup."  (Docket Entry No. 45, Ex. 6).  Dekelaita complained "of his jaws hurting when he eats and some ear pain."  (*Id.*, Ex. 6).  Dekelaita also complained of anxiety, stress, grinding his teeth, and difficulty sleeping.  (*Id.*, Ex. 4 at 39–40).  Dr. Eisen prescribed Lexapro, an antianxiety medication, and recommended that Dekelaita eat soft foods and take over-the-counter medication to alleviate his jaw pain.  (*Id.*, Ex. 4 at 40–41).  Dekelaita also visited Dr. Eisen on April 3, 2006, complaining of flu-like symptoms.  (Docket Entry No. 47, Ex. C).  The record of that visit shows no other complaints.  (*Id.*, Ex. C).

Dekelaita began seeing Dr. Arthur Tarbox, a psychologist, and Dr. David Axelrad, a psychiatrist, in March or April 2007.  (*Id.*, Ex. 4 at 13).  The records from these doctors show that Dekelaita complained of depression, poor sleep, isolation and social withdrawal, restlessness and agitation, anxiety, nightmares, demoralization, and difficulty concentrating.  (Docket Entry No. 45, Exs. 7, 8).  In a June 2007 report to Dekelaita's counsel, Dr. Tarbox diagnosed Dekelaita as having "[s]ome residual features of Posttraumatic Stress Disorder, Chronic," "Adjustment Disorder with Mixed Anxiety and Depressed Mood," and

"Generalized Anxiety Disorder."  (Docket Entry No. 45, Ex. 7).  Dr. Tarbox opined that Dekelaita would require psychological or psychiatric treatment for 3 to 6 months.  (*Id.*, Ex. 7).

Dr. David Axelrad saw Dekelaita on June 26, 2007, at the request of Dekelaita's counsel.  In an October 26, 2007 report to counsel, Dr. Alexrad diagnosed Dekelaita with "Posttraumatic Stress Disorder, Chronic–Moderate-to-Severe" and "Major Depressive Disorder, Single Episode—Moderate."   Dr. Axelrad concluded that Dekelaita met the requirements for short-term medical disability leave "because of his psychiatric problems and impairment."  (Docket Entry No. 45, Ex. 8).  Dekelaita went on short-term disability leave on October 29, 2007.  Neither Dr. Tarbox nor Dr. Axelrad mentioned TMJ syndrome or jaw pain in these reports to counsel about Dekelaita.

Citing *City of Tyler v. Likes*, 962 S.W.2d 489, 494–96 (Tex. 1997), BP argues that Dekelaita's claims for negligence, negligence *per se*, and premises liability fail as a matter of law because the record discloses that he suffered no physical injury in the explosion and "a plaintiff cannot recover mental anguish damages without an accompanying physical injury if a defendant only negligently inflicted those damages."  (Docket Entry No. 41 at 5).  Dekelaita does not seek to recover mental-anguish damages under a bystander liability theory.  BP argues that Dekelaita cannot recover for assault because he was not physically injured in the explosion and did not experience an assault by threat.  Citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62 (Tex. 1998), BP argues that Dekelaita's claim for intentional infliction of emotional distress fails because Dekelaita cannot raise a fact issue

that "the intended or primary consequence" of BP's conduct was "to cause emotional distress, not injury." (Docket Entry No. 41 at 9).

Dekelaita responds that his negligence claims may proceed because there is summary judgment evidence that he hurt his shoulder, neck, and jaw and suffered hearing loss directly in the explosion; that he suffered from TMJ from the emotional stress that resulted from the explosion; and that these physical injuries are sufficient to allow him to recover damages for both the physical injuries and the mental anguish. Dekelaita argues that the summary judgment evidence also allows him to recover on his assault claims, either because he sustained physical injuries as a result of the explosion and/or the stress resulting from the explosion or because BP's conduct raises a fact issue as to assault by threat. (Docket Entry No. 45 at 10). Dekelaita further argues that his claim for intentional infliction of emotional distress should proceed as a "'gap-filler' tort." (*Id.* at 13).

The parties' arguments are analyzed below.

## II.   The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln General Ins. Co. v. Reyna*, 401 F.3d (5th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may either (1) submit evidentiary documents that negate the existence of some material element of the opponent's claim or defense, or (2) if the crucial issue is one on which the opponent will bear

the ultimate burden of proof at trial, demonstrate that the evidence in the record insufficiently supports an essential element or claim. *Celotex*, 477 U.S. at 330. The party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, but need not negate the elements of the nonmovant's case. *Bourdeaux v. Swift Transp. Co., Inc.,* 402 F.3d 536, 540 (5th Cir. 2005). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 535 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986)). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a motion for summary judgment by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 305 (5th Cir. 2004). This burden is not satisfied by "some metaphysical doubt as to the material facts," "conclusory allegations," "unsubstantiated assertions," or "only a scintilla of evidence." *Young v. ExxonMobil Corp*., 155 Fed. Appx. 798, 800 (5th Cir. 2005). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Young*, 155 Fed. Appx. at 800.

## III.    Analysis

The parties do not dispute that Texas law applies to this diversity action. To determine Texas law, this court looks to the final decisions of the Texas Supreme Court. In the absence of a final decision by the Texas Supreme Court on an issue, this court must make an "*Erie* guess" and determine how that court would resolve the issue if presented with the same case. *See In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007).

### A.  Dekelaita's Negligence-Based Claims

In *Likes*, the Texas Supreme Court considered whether a city could be liable for mental-anguish damages for negligently flooding the plaintiff's house and causing the loss of "personal irreplaceable items." 962 S.W.2d at 493. To analyze the claim under the Texas Tort Claims Act, the Texas Supreme Court had to determine whether the plaintiff would have a claim for mental anguish under common law against a private defendant. The court analyzed Texas law on a plaintiff's ability to recover damages for mental anguish in a negligence case when there is no physical injury except physical manifestations of the mental anguish itself. Although the court did not "attempt the perhaps impossible task of distilling a unified theory of mental anguish from the existing precedents," it did "erect a framework of existing case law to assist in examining the claim before us." *Id.* at 496. That framework must be applied to the present claim and record.

The Texas Supreme Court stated:

> Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish. While negligently inflicted anguish may be an element of recoverable damages when the defendant violates some other duty to the plaintiff, this depends on both the nature of the duty breached and the quality of proof offered by the plaintiff. For many breaches of legal

duties, even tortious ones, the law affords no right to recover for resulting mental anguish. . . .

Although mental anguish is a real and serious harm, there are two principal reasons why courts are not willing to recognize it as a compensable element of damages in every case where it occurs.  First, it is difficult to predict.  The invasion of the same legal right may lead to extreme anguish in one person while causing essentially no emotional damage to another.  Because of this variability in human nature, it is difficult for the law to distinguish between those instances when mental anguish is reasonably foreseeable from particular conduct and those when it is so remote that the law should impose no duty to prevent it.  For this reason, Texas courts at one time categorized mental anguish in most types of cases as too remote or speculative to be compensable as actual damages,  holding the emotional consequences of the tort relevant only to exemplary damages. . . .

Second, even in circumstances where mental anguish is a foreseeable result of wrongful conduct, its existence is inherently difficult to verify.  For years the fear of false claims led us to require objective bodily symptoms of anguish in most types of cases.  We eliminated this "physical manifestation" requirement after concluding that physical symptoms are not an accurate indicator of genuine mental anguish.  Yet even in those cases where a defendant has breached the type of duty for which mental anguish is recoverable, we frequently demand "direct evidence of the nature, duration, and severity of [the] mental anguish, . . . establishing a substantial disruption in the plaintiffs' daily routine."   While we recognize that such artificial evidentiary barriers as the *Parkway* standard may merely encourage exaggeration and penalize those who deal constructively with life's vicissitudes, we continue to insist on such safeguards because the law has not yet discovered a satisfactory empirical test for what is by definition a subjective injury.

These considerations, filtered over decades and centuries through the common law process, have led most courts to conclude that there are some categories of cases in which the problems of foreseeability and genuineness are sufficiently mitigated that the law should allow recovery for anguish.

Mental anguish damages are recoverable for some common law torts that generally involve intentional or malicious conduct such as libel and battery, and by analogy for knowing violations of certain statutes such as the Deceptive Trade Practices Act. This is appropriate because the high level of culpability affects the determination of proximate cause, and makes it just that the defendant should bear the risk of any overcompensation that an award of mental anguish damages in a particular case might entail. However, [the plaintiff] has not alleged that the City intended or knew that its actions would result in the flooding of her home, or that it acted with malice.

Moreover, even where the defendant's conduct was merely negligent, "Texas has authorized recovery of mental anguish damages in virtually all personal injury actions."   "Where serious bodily injury is inflicted, . . . we know that some degree of physical and mental suffering is the necessary result." Similarly, when the defendant's negligence causes a mental shock which produces a serious bodily, the defendant is liable for that injury provided it was foreseeable, and mental anguish is one element of damages just as it would be for any other serious injury. . . .

Mental anguish is also compensable as the foreseeable result of a breach of duty arising out of certain special relationships. These include the physician-patient relationship, perhaps because most physicians' negligence also causes bodily injury, and a very limited number of contracts dealing with intensely emotional noncommercial subjects such as preparing a corpse for burial, or delivering news of a family emergency.  We have made it clear, however, that most relationships, whether legal or personal, create no duty to avoid causing mental anguish. . . .

Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, we permit recovery for mental anguish in only a few types of cases involving injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result. These include suits for wrongful death and actions by bystanders for a close family member's serious injury . . . .

11

*Likes,* 962 S.W.2d at 494–96 (internal citations omitted).

A Texas court issuing a decision after *Likes* has summarized its results, as follows:

> In those instances when mental anguish damages have been recoverable, foreseeability and legitimacy of the injury are satisfied. Similarly, mental anguish damages are recoverable in virtually all personal injury actions where serious bodily injury is inflicted. Other types of cases allowing recovery for mental anguish damages absent malice or intent, serious bodily injury, or . . . a special relationship between the parties, are those cases involving "injuries of such a shocking and disturbing nature that mental anguish is a highly foreseeable result."

*Fitzpatrick v. Copeland, et al.*, 80 S.W.3d 297, 302–03 (Tex. App.—Ft. Worth 2002, pet.

denied). In *Copeland*, the plaintiff was involved in a car accident in which her best friend,

the driver, was killed but she, the passenger, suffered no physical injury. After the accident,

she suffered posttraumatic stress disorder, experiencing flashbacks of the event,

uncontrollable crying, debilitating mood shift, sleep deprivation, intense grief, depression,

and anxiety. She sued to recover damages for her mental anguish. The court found that the

plaintiff's case "clearly falls outside the types of cases in which mental anguish has been held

compensable under Texas law" and "decline[d] to adopt a special rule allowing recovery of

negligent infliction of mental anguish damages where a plaintiff is involved in a motor

vehicle accident but suffered no physical injury." *Id.* at 305–06.

Other Texas courts have similarly summarized the results after *Likes*, stating that

under Texas law, mental-anguish damages are an element of recoverable damages only in

limited circumstances: "(1) as the foreseeable result of a breach of duty arising out of certain

special relationships, such as the relationship between a physician and a patient; (2) for some

common law torts that generally involve intentional or malicious conduct such as libel and,

by analogy, for violations of certain statutes such as the DTPA; and (3) in virtually all personal injury cases where the defendant's conduct causes serious bodily injury." *Verinakis v. Med. Profiles, Inc.*, 987 S.W.2d 90, 95 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (citing *Likes*, 962 S.W.2d at 494–96). In *Verinakis*, the plaintiff had a blood test done and was notified that he had tested positive for HIV. A series of subsequent blood tests indicated that he was HIV negative, but his HIV negative status was not confirmed until approximately three months later. The plaintiff sued the laboratory that performed the blood test, asserting a negligence claim and seeking to recover mental-anguish damages. The court noted that because the plaintiff "assert[ed] an ordinary negligence claim based on the breach of [the defendant laboratory's] duty to use reasonable care in collecting and processing [the plaintiff's] blood for testing . . . [the plaintiff] must show that [he] suffered a serious bodily injury in order to recover on [his] mental anguish claim." *Id.* at 95. To support his claim for mental-anguish damages, the plaintiff asserted that he became physically sick after being told that he was HIV positive, had sweating spells connected with anxiety, was depressed and withdrawn, suffered from insomnia, and contemplated suicide. He also asserted that he suffered pain and bruising resulting from multiple blood tests as part of the HIV follow-up. The court found that the plaintiff's complaints "do not rise to the level of serious bodily injury necessary to support the recovery of mental anguish damages as contemplated in *Likes*." *Id*. at 95. "Without intent or malice on the defendant's part, serious bodily injury to the plaintiff, or a special relationship between the two parties, Texas permits recovery for mental anguish in only a few cases such as suits for wrongful death or actions by bystanders who witness a close family member's serious injury." *Id.* (citing *Likes*, 962 S.W.2d at 496).

13

Dekelaita does not assert that BP "stands in some special relationship with him." (Docket Entry No. 45 at 8). Nor does he assert that he is entitled to recover on a bystander theory of liability. He acknowledges that immediately after the explosion, he was not among those who came face-to-face with the blast's effects. The issue is whether the record supports an inference that he suffered a physical injury, such that he can recover damages under Texas law for the mental anguish he alleges he suffered because of the explosion.

Texas does not recognize a general legal duty to avoid negligently inflicting mental anguish. *Likes*, 962 S.W.2d at 494 (citing *Boyles v. Kerr*, 855 S.W.2d 593, 597 (Tex. 1993)). In a negligence case, only "serious bodily injuries . . . can form the basis for recovering mental anguish damages." *Id.* at 496; *see also Fiske v. Fiske*, No. 01-03-00048-CV, 2004 WL 1847368, at *3 (Tex. App.—Houston [1st Dist.] Aug. 19, 2004, no pet.) ("Texas authorizes mental anguish damages as an element of recoverable damages in virtually all personal injury cases where the defendant's conduct causes serious bodily injury." (citing *Likes*, 962 S.W.2d at 495)); *Weidner v. Sanchez*, 14 S.W.3d 353, 367 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (same). Texas courts have acknowledged that "[w]here serious bodily injury is inflicted, . . . we know that some degree of physical and mental suffering is the necessary result." *Likes*, 962 S.W.2d at 495 (quoting *Brown v. Sullivan*, 10 S.W. 288, 290 (1888)). "Similarly, when the defendant's negligence causes a mental shock which produces a serious bodily injury, the defendant is liable for that injury provided it was foreseeable." *Id.* at 495–96 (citing *Houston Elec. Co. v. Dorsett*, 194 S.W.2d 546 (Tex. 1946)).

Dekelaita asserts that the explosion itself caused him immediate serious physical injury.  He alternatively argues that he suffered serious physical injury as an indirect, delayed result of the explosion.  Both assertions are examined below.

### 1.    Did the Explosion Itself Cause Dekelaita Serious Bodily Injury?

Dekelaita asserts that the explosion injured his shoulder and aggravated a preexisting shoulder injury and preexisting hearing loss.  (Docket Entry No. 45, Ex. 5 at 2).  Dekelaita states in his March 4, 2008 affidavit that "as a result of the explosion (and my fall that occurred when I was attempting to flee the explosion), I suffered several physical injuries to my neck, the aggravation of a preexisting shoulder injury, [and] hearing loss." (Docket Entry No. 45, Ex. 5 at 2).  During his December 6, 2007 deposition, Dekelaita was questioned three times about any physical injuries he may have suffered as a result of the ISOM unit explosion.  In each instance, he stated that the explosion had not caused him any physical injury.

Dekelaita was initially asked in his deposition whether he was asserting a claim for physical injury in this lawsuit:

> Q: Okay.  Are you claiming any sort of physical injuries as a result of the March 23, 2005 incident at the BP plant other than a claim for mental anguish or mental injury?
>
> A: Well, no, I didn't—I didn't lose an arm or leg, but I consider the brain probably and the mind a part of the body function that, you know, is just as important as a finger or arm or leg or getting burned, so, yes.
>
> Q: Okay.
>
> A: *I mean, that's the only damage I have is mental.*

> Q: All right.  And what I'm specifically getting at, are you claiming any sort of orthopedic injuries such as a hurt neck or back or shoulder injury as a result of the accident?

> A: No.  *No, I have constant shoulder pain, but that's not from the BP incident.  That happened years ago*.

(Docket Entry No. 45, Ex. 4 at 29) (emphasis added).  Later in the deposition, Dekelaita was

questioned about any hearing loss or other ear problems caused by the explosion:

> Q: Are you claiming to experience any sort of hearing loss or ear problems as a result of the accident?

> A: I have mid range hearing loss.  I think I had that before the accident, sir, okay.

> Q: Okay.  I noticed that in some of your records that you had a hearing test back in April of '04, around that time period indicated you had done poorly on a hearing test—

> A: Yes, sir.  Yes, sir.

> Q: —at a job site?

> A: Yes.  And I *have mid range hearing loss and have had that for a while,* so, yes.

>    . . .

> Q: Okay.  Have you had a hearing test since the explosion?

> A: Yes.

> Q: And where was that and—

> A: I don't remember.  It was in Houston.  I can't recall the doctor's name.  They did a basic—the same test that usually they run on anybody.  I don't know what the test results were. I think he said you have *some mid range hearing loss,* you know.

> Q: Okay.

> A: *Kind of confirmed what I already knew, you know*.

(*Id.*, Ex. 4 at 72–73) (emphasis added).  Dekelaita was further questioned about his personal experience of the explosion:

> Q: All right.  Describe for us in your own words what happened at the time of the accident, what you saw, what you observed and what you did—
>
> A: Okay.
>
> Q: —at the time of the explosion as you were in the machine shop in the drill press area on March 23rd, '05?
>
> A: Well, I was standing there and we heard a boom.  And I looked up because it was a wave coming through and it almost in slow motion I could see the lights, you know, starting to pop and break.  And even though this happened really quickly, I saw it in slow motion, okay.  I hit the ground.  I don't know if it was because of the force of that or just me.  I hit the ground at the same time and then I got up and I started running as fast as I could. . . .
>
> Q: All right.  What caused you to fall?
>
> A: I don't know.  I think—I probably hit the deck, you know what I mean.  The percussion and me in reaction, I hit the deck, okay.  *Now, I didn't get hurt when I hit the deck,* but I hit the deck.
>
> Q: Okay.
>
> A: And then I popped up and started running . . . .

(*Id.*, Ex. 4, at 84–87) (emphasis added).  On each of these three occasions, Dekelaita clearly stated that he had suffered no physical injury as a result of the explosion.

Dekelaita testified in his deposition that he first saw Dr. Eisen months after the blast. He agreed that the office visit record showed that this visit occurred eleven months later.  He

complained at that visit about trouble sleeping, rapid heartbeat, and muscle pain in his neck, shoulders, and jaw.  He testified that most of these symptoms went away after he started taking the Lexapro medication that she prescribed.  (Docket Entry No. 45, Ex. 4 at 40–41). When asked about the jaw pain, Dekelaita testified that it was from the stress.  (*Id.* at 41).

In his March 4, 2008 affidavit submitted in response to BP's summary judgment motion, Dekelaita stated that "as a result of the explosion (and [his] fall that occurred when [he] was attempting to flee the explosion), [he] suffered several physical injuries to [his] neck, the aggravation of a preexisting shoulder injury, hearing loss, and temporomandibular joint disorder ("TMJ")."  (Docket Entry No. 45, Ex. 5, ¶ 6).  He stated that the "shoulder injury was an aggravation of an old problem" and that the "neck and shoulder injuries were caused when [he] hit the floor in an attempt to flee the exploding refinery. [His] symptoms began within 36 hours of the explosion."  (*Id.*, Ex. 5, ¶ 9).  He stated that before the explosion he had had "some" hearing loss, which the explosion aggravated.  He stated that his "hearing problems were not this bad before the explosion."  (*Id.*, Ex. 5, ¶ 11).  These paragraphs in the affidavit directly conflict with Dekelaita's repeated statements in his deposition that: he was not hurt in the explosion; he was not injured from "hitting the deck" when the explosion occurred; his preexisting mid-range hearing loss remained in the same range after the explosion; and his shoulder pain was not from the BP explosion but from a prior accident.

Dekelaita's affidavit statements do not create a fact issue as to whether the explosion caused him "serious bodily injury."  Although a court "must resolve all factual inferences in favor of the nonmovant" in considering a summary judgment motion, "the nonmovant cannot

manufacture a disputed material fact where none exists." *Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 228 (5th Cir. 1984) (citing *Russell v. Harrison*, 736 F.2d 283, 287 (5th Cir. 1984)); *see also Price v. Jefferson County*, 470 F. Supp. 2d 665, 678 (E.D. Tex. 2006). The nonmovant cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992)).  If an affidavit directly conflicts with the affiant's prior sworn testimony and the nonmovant does not explain that conflict, "the court must view that affidavit with profound skepticism." *Tex. Sales and Mktg., Inc. v. Distinctive Appliances, Inc.*, No. H-05-3555, 2007 WL 399292, at *6 (S.D. Tex. Jan. 31, 2007) (citing *Herrera v. CTS Corp.*, 183 F. Supp. 2d 921, 928 (S.D. Tex. 2002)).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (citing *Parma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969); *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1365–66 (8th Cir. 1983); *Radobenko v. Automated Equip Corp.*, 520 F.2d 540, 544 (9th Cir. 1975)).

When a party's affidavit contradicts deposition testimony, "such a contradictory sworn statement should not be considered when no explanation is offered for the inconsistency." *BLS Joint Venture v. Bank Home Savings Ass'n*, 985 F.2d 556, at *4 (5th Cir. 1993) (citing *Albertson*, 749 F.2d at 228).  It is within the court's discretion to disregard the affidavit

altogether should the court determine that it is dealing with a "sham" affidavit.  *See Doe*, 220 F.3d at 386.

Dekelaita does attempt to explain his inconsistent deposition and affidavit testimony, but the explanation is clearly legally insufficient.  First, he blames the cross-examining lawyers for not asking questions aimed at soliciting information about whether he sustained physical injuries in the explosion or as a result of "hitting the deck" when the explosion occurred.  Dekelaita states in his affidavit that during his deposition, he was never asked such questions as:  "Were you injured when you fell as you ran from the explosion?"; "Did you have any physical injuries that manifested themselves and later resolved as a result of the explosion?"; and "Did you sustain any hearing loss in the explosion?"  (Docket Entry No. 45, Ex. 5 at 2).  Dekelaita asserts that if he had been asked such questions, he "would have testified that as a result of the explosion (and [his] fall that occurred when [he] was attempting to flee the explosion), [he] suffered several physical injuries . . . ."  (*Id.*, Ex. 5 at 2).

The deposition transcript directly undercuts this argument.  The transcript shows that the lawyers *did* ask Dekelaita, directly and unambiguously, whether he suffered any physical injuries from the ISOM unit explosion or from the fall he took when it occurred.  He was specifically asked about any physical injuries, including orthopedic injuries and his hearing loss, resulting from the explosion.  In response to each clear and unambiguous question, Dekelaita stated clearly and unambiguously – and repeatedly – that the explosion had not caused him any physical injury.  (Docket Entry No. 45, Ex. 4 at 29, 72–73, 84–87).

Dekelaita's brief in response to BP's summary judgment motion also presents some explanation of the conflicts between his deposition and later affidavit.  This explanation, however, creates even more unexplained inconsistencies.  In his affidavit, Dekelaita asserted that he suffered "neck and shoulder injuries" that "were caused when [he] hit the floor in an attempt to flee the exploding refinery."  (Docket Entry No. 45, Ex. 5 at 2).  In his affidavit, Dekelaita asserted that his "symptoms *began* within 36 hours of the explosion.  There could be no other cause of the injuries."  (*Id.*, Ex. 5 at 2 (emphasis added)).  In his brief, Dekelaita asserted that "his shoulder injury *resolved* within 36 hours of the explosion."  (Docket Entry No. 51 at 2 (emphasis added)).  These statements are inconsistent with each other.  The statements do not explain the inconsistency between the affidavit – stating that the neck and shoulder pain began within 36 hours after the explosion – and the deposition – stating that there was no injury caused by the explosion or hitting the floor to avoid it.

"When the sole evidence purporting to create a genuine issue of material fact and thus to preclude summary judgment is an affidavit that conflicts with deposition testimony, [the Fifth Circuit has] required an explanation of this conflict."  *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F.3d 472, 482 (5th Cir. 2002).  A court presented with such an affidavit must examine whether the affidavit "directly contradict[s]" the affiant's earlier deposition testimony.  *See Thurman*, 952 F.2d at 137 n.23.  If the explanation for the direct contradiction is insufficient to create a genuine issue of material fact required to defeat summary judgment, the court may disregard the affidavit.  *See id.*; *see also Doe*, 220 F.3d at 386–87.  Dekelaita's affidavit directly contradicts his deposition testimony.  Dekelaita was asked multiple times during his deposition whether he suffered any physical injury as a direct result of the

21

explosion itself.  Each time he clearly stated that he had not.  In his affidavit, he asserted that the explosion caused injuries to his shoulder, neck, and jaw and aggravated a preexisting hearing problem.  He stated that he did not volunteer information about these injuries during his deposition because he had not been asked questions that directly solicited such information.  The deposition transcript does not support this contention.

Nor does the factual record otherwise support the statements in Dekelaita's affidavit. In his affidavit, Dekelaita stated that in February 2006, he "went to see [his] primary care doctor specifically because of the pain in [his] neck, shoulder, and jaw." (Docket Entry No. 45, Ex. 5 at 2).  The records from this visit to Dr. Eisen, eleven months after the explosion, do not support this statement.  Dr. Eisen's records show that Dekelaita visited for an "annual checkup."  (*Id.*, Ex. 6).  In documenting Dekelaita's "history of present illness," Dr. Eisen noted that Dekelaita complained about "his jaws hurting when he eats and some ear pain," as well as about "one episode of sharp sternal chest pain while he was sitting at his computer," which "lasted less than a minute and was gone."  (*Id.*, Ex. 6).  Dekelaita also complained about anxiety, stress, dreading work, grinding his teeth, and difficulty sleeping at night.  Dr. Eisen's records do not show that Dekelaita complained of shoulder or neck pain.  Dr. Eisen conducted an annual physical, discussed diet and exercise with Dekelaita, prescribed Lexapro for his "[g]eneralized anxiety," and diagnosed his jaw pain as TMJ syndrome. (*Id.*, Ex. 6).  She suggested that he keep a soft diet, take over-the-counter Aleve, and visit his dentist to get a plate to wear at night to avoid grinding his teeth.  Records from two other visits to Dr. Eisen after the explosion do not show that Dekelaita sought any medical treatment for his shoulder or neck.  (Docket Entry No. 47, Exs. A, C).

Dekelaita's affidavit and explanation for why the affidavit directly contradicts both his deposition testimony and the factual record are insufficient to create a fact issue as to whether he suffered physical injury due to the explosion itself. *See Doe*, 220 F.3d at 386–87. Dekelaita's deposition establishes that he did not suffer any physical injury in the explosion or when he "hit the deck"; did not aggravate his preexisting shoulder injury; did not injure his neck; and did not aggravate his hearing loss. The only physical injuries that he describes in his deposition as resulting from the explosion are the belated physical manifestations of stress: difficulty in sleeping and TMJ syndrome.

2. *Did the Explosion Cause a Mental Shock that Produced a Serious Bodily Injury?*

Dekelaita argues that he developed TMJ syndrome as a result of emotional stress caused by "the explosion and the resulting mental injuries he sustained." (*Id.*, Ex. 9 at 3). The only discussion of the TMJ in Dekelaita's affidavit is that it began some (unspecified) time after the explosion. (Docket Entry No. 45, Ex. 5, ¶ 10). In his deposition, Dekelaita testified that the TMJ resulted from the stress he experienced some time after the explosion. (*Id.*, Ex. 4 at 41). Dekelaita stated that his understanding from Dr. Eisen and Dr. Axelrad was that the "explosion caused [his] TMJ injury." (*Id.*, Ex. 5, ¶ 10). Dr. Axelrad stated in his affidavit that "[e]motional stress often plays an integral role in causing TMJ" because stress "can [a]ffect the muscles of the jaw, face, and neck." (Docket Entry No. 45, Ex. 9, ¶ 11). After examining Dekelaita, Dr. Axelrad concluded that the TMJ "was caused by the explosion and the resulting mental injuries he sustained." (*Id.*, Ex. 9, ¶ 14). In a letter to Dekelaita's lawyers dated October 26, 2007, Dr. Axelrad stated that the Dekelaita's nine-month service on the BP team investigating the explosion had "retraumatized" him and that

23

his "psychiatric problems have clearly intensified with significant exacerbation of his Posttraumtic Stress Disorder and his Major Depressive Disorder." (*Id.*, Ex. 8 at 2). Dr. Axelrad does not mention TMJ in this letter to Arnold & Itkin, Dekelaita's lawyers.

Dekelaita has not raised a fact issue as to whether the explosion caused a "mental shock" that "produce[d]" a serious bodily injury. *Likes*, 962 S.W.2d at 495. The record shows that at an annual physical eleven months after the explosion, Dekelaita sought treatment from Dr. Eisen for anxiety and TMJ syndrome. Dr. Axelrad, a psychiatrist, stated in an affidavit that "[e]motional stress often plays an integral role in causing TMJ [syndrome]," which includes "popping sounds in the jaw, inability to fully open the mouth, jaw pain, headaches, earaches, toothaches, and various other types of facial pain." (Docket Entry No. 45, Ex. 9 at 3). Dekelaita only complained to Dr. Eisen about some pain in the jaw when he ate and some ear pain at night. Dr. Eisen's prescribed treatment for Dekelaita's TMJ syndrome was to eat soft foods, take over-the-counter pain medication, visit a dentist to get a plate to wear at night to prevent teeth-grinding, and take Lexapro for anxiety. Dekelaita stated in his deposition that his TMJ and other mental-anguish symptoms were relieved shortly after he visited Dr. Eisen and was put on Lexapro. When asked about the "problems with your jaw, TMJ," Dekelaita testified, "It was stress. Once I got on the Lexapro and I started taking that regularly, I guess, about three weeks into it, most of those symptoms went away." (*Id.*, Ex. 5, p. 41).

The record does not raise a fact issue as to whether Dekelaita's TMJ syndrome constitutes the kind of serious bodily injury caused by a mental shock that supports the recovery of mental-anguish damages in a negligence case under Texas law. Dekelaita cites

no negligence case in which a court has awarded mental-anguish damages for TMJ resulting from emotional stress caused by a mental shock.  To the contrary, in recent years Texas courts have found that the *Likes* requirement of "serious bodily injury" in a negligence case is high, declining to award mental-anguish damages based on a wide range of physical symptoms resulting from a mental shock.  In *Fitzpatrick v. Copeland,* 80 S.W.3d at 302–03, the court considered a  plaintiff who had been involved in a motor vehicle accident in which she suffered no injury but had later been diagnosed with posttraumatic stress disorder.  The plaintiff suffered "pronounced anxiety" when driving, continued to experience flashbacks of the accident, and underwent "pronounced change[s]" in personality and appearance.  The court found that the plaintiff's case "clearly falls outside the types of cases in which mental anguish has been held compensable under Texas law" and "decline[d] to adopt a special rule allowing recovery of negligent infliction of mental anguish damages where a plaintiff is involved in a motor vehicle accident but suffered no physical injury."  *Id.* at 305.  In *Verinakis*, 987 S.W.2d 90, the court considered the negligence claim of a plaintiff who had been misdiagnosed as HIV positive.  The plaintiff presented summary judgment evidence that he "became physically sick after being told he was HIV positive," had sweating spells, became depressed and withdrawn, suffered from insomnia, contemplated suicide, and suffered bruising and pain due to repeatedly having blood drawn as part of his HIV follow-up.  *Id.* at 95.  Noting that the plaintiff did not claim a special relationship with the defendant or make a claim of wrongful death or bystander injury, the court found that the plaintiff asserted "an ordinary negligence claim" that required him to show a "serious bodily injury in order to recover" for mental anguish.  *Id.*  Examining the plaintiff's claim that he suffered

"physical and mental ailments from his emotional distress," the court held the plaintiff's "complaints do not rise to the level of serious bodily injury necessary to support the recovery of mental-anguish damages as contemplated in *Likes*." *Id.* Similarly, in *Johnson v. Methodist Hosp*., 226 S.W.3d 525 (Tex. App.—Houston [1st Dist.] 2006, no pet.), the court relied on *Verinakis* to reverse an award of mental-anguish damages to a plaintiff who had been misdiagnosed with HIV and suffered bruising and pain due to repeated blood work and injections of AZT.  The court noted that like the plaintiff in *Verinakis*, the plaintiff in *Johnson* did not claim a special relationship with the defendants or make a claim for recovery based on bystander injury or wrongful death.  Instead, the plaintiff asserted "an ordinary negligence claim," such that her "award of mental anguish damages must be supported by a finding of physical injury." *Id.* at 530.  The *Johnson* court held that none of the plaintiff's alleged physical injuries "rose to the level necessary to support the recovery of mental anguish damages." *Id.*  Texas courts have sustained mental-anguish damages in cases involving "ordinary" negligence claims only if the plaintiff has shown serious bodily injury. *See, e.g.*, *Ontiveroas v. Lozano*, No. 14-05-00294-CV, 2006 WL 1140374 (Tex. App.—Houston [14th Dist.] April 27, 2006, no pet.) (finding that the evidence was legally sufficient to support mental-anguish damages in case in which plaintiffs could barely walk after the car accident, feared they would never be able to walk without a limp, and experienced pain for at least a month after the accident, including back, shoulder, and side pain requiring chiropractic treatment); *Fiske v. Fiske*, No. 01-03-00048-CV, 2004 WL 1847368, at *3–4 (Tex. App.—Houston [1st Dist.] Aug. 19, 2004, no pet.) (finding that "the evidence was legally and factually sufficient to support an award of damages for [the

plaintiff's] physical pain and mental anguish" in case in which plaintiff "sustained a broken leg and broken ribs," had to see a neurologist, had continuing neck problems, developed a fear of driving, and suffered from depression).

Dekelaita did not suffer physical injury in the explosion itself.  The physical symptoms of mental distress he exhibited are far less than the symptoms found to be "serious" physical injury necessary for a mental-anguish damages award based on a "mental shock" from an event allegedly caused by the defendant's negligence.  *See Cavitt v. Jetton's Greenway Plaza Cafeteria*, 563 S.W.2d 319, 322–24 (Tex. Civ. App.—Houston [1st Dist.] 1978, no pet.); *Houston Elec. Co. v. Dorsett*, 194 S.W.2d 546, 546 (Tex. 1946); *Hill v. Kimball*, 13 S.W. 59 (Tex. 1890) .   The physical symptoms of the TMJ he reported were, according to his medical records and deposition testimony, similar in severity to the bruising and pain rejected as "serious physical injury" in *Verinakas* and *Johnson*.

*Likes* cited cases in which the courts have allowed mental-anguish damages awards for a traumatic mental shock followed by an acute, serious physical reaction or chronic, serious symptoms.  As noted, these cases involve physical conditions significantly more acute and debilitating than the TMJ syndrome at issue in this case.  *See Cavitt v. Jetton's Greenway Plaza Cafeteria*, 563 S.W.2d at 322–24 (holding that jury's refusal to award plaintiff damages for mental anguish was against weight and preponderance of evidence showing that after finding a roach in her food, plaintiff experienced severe and persistent nausea, anxiety, and severe abdominal pains and acute gastroenteritis over the course of the following year); *Houston Elec. Co. v. Dorsett*, 194 S.W.2d at 546 (affirming award of mental-anguish damages to plaintiff who suffered "extreme nervousness, severe headaches,

lapse of memory, and brain deterioration" after a bus narrowly missed striking her); *Hill v. Kimball*, 13 S.W. at 59  (finding that the plaintiff had a cause of action to recover damages for a miscarriage after witnessing a violent assault).  Dekelaita has not raised a fact issue as to whether his TMJ syndrome rises to the level of serious bodily injury necessary to support the recovery of mental-anguish damages under Texas law.

> 3. *Conclusion*

Dekelaita has failed to show a disputed fact issue material to determining that he did not sustain physical injury in the explosion itself or as a result of the mental shock produced by the explosion.  The record shows that Dekelaita did not suffer physical injury in the explosion itself.  And the evidence of the physical symptoms of his mental anguish – some TMJ symptoms and sleeplessness – shows that these symptoms are not so severe as to rise to the level of "serious" bodily injury necessary for mental-anguish damages for negligence. Under Texas law, except in specific and limited instances, mental-anguish damages are not recoverable in a negligence case if the plaintiff did not also suffer serious bodily injury, either from the event allegedly caused by the negligence or from the mental shock caused by the event.  *Likes*, 962 S.W.2d at 496.  Dekelaita has failed to raise a fact issue as to whether he suffered serious bodily injury in the explosion, or from a mental shock produced by the explosion, that can support an award of mental-anguish damages for his negligence-based claims.  He cannot recover for the mental anguish he allegedly suffered as a result of BP's negligence.

A plaintiff who cannot support a cause of action for negligence cannot recover for gross negligence because a finding of ordinary negligence is a prerequisite to a finding of

gross negligence.  *See Hall v. Stephenson*, 919 S.W.2d 454, 468 (Tex. App.—Ft. Worth 1996, writ denied) (citations omitted); *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 174 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (citations omitted); *Trevino v. Lightning Laydown, Inc.*, 782 S.W.2d 946, 949 (Tex. App.—Austin 1990, writ denied).   Because Dekelaita has not shown recoverable damages necessary to support his negligence claim, he cannot succeed on his claim for gross negligence.

BP's summary judgment motion is granted as to Dekelaita's negligence claims.

### B.     Assault

Texas law recognizes that a defendant may be liable for mental-anguish damages absent physical injury for common-law torts that involve intentional or malicious conduct. Examples cited in the *Likes* case include libel, battery, and knowing violations of the DTPA. *Likes*, 962 S.W.2d at 495.  Dekelaita asserts causes of action for assault and assault by threat.

Under Texas law, the elements of civil assault are the same as the elements of criminal assault.  *See Umana v. Kroger Tex., L.P.*, 239 S.W.3d 434, 436 (Tex. App.—Dallas 2007, no pet.); *Johnson v. Davis*, 178 S.W.3d 230, 240 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).  The Texas Penal Code definition of assault is found at section 22.01.

> (a) A person commits an offense if the person:
>
> > (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
> >
> > (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.

TEX. PEN. CODE § 22.01.  The Texas definition of battery is identical to the portion of the Texas definition of assault found at Texas Penal Code § 22.01(a)(3).  *See Bailey v. CS.,* 12 S.W.3d 159, 162 (Tex. App.—Dallas 2000, no pet.) (stating that "[a] person commits a battery if he intentionally or knowingly causes physical contact with another when he knows or should reasonably believe the other person will regard the contact as offensive or provocative." (citations omitted)).

BP argues that because Dekelaita was not physically injured in the ISOM explosion, he cannot maintain a cause of action for assault.  BP also argues that Dekelaita cannot maintain a cause of action for assault by threat because he cannot show that BP threatened Dekelaita with imminent physical injury.  Citing *McGowen v. State*, 664 S.W.2d 355, 357–58 (Tex. Crim. App. 1984), BP argues that "an act causing an injury is not, in itself, enough to establish an assault by threat."  (Docket Entry No. 41 at 11).

Dekelaita responds that his claim for assault should survive summary judgment because he suffered a physical injury.  Dekelaita also argues that he experienced an assault by threat because "BP knowingly placed [him] in a reasonable apprehension of imminent bodily injury."  (Docket Entry No. 45 at 10).

### 1. *Assault by Physical Injury*

Texas Penal Code § 22.01(a)(1) requires proof that the defendant actually caused "bodily injury" to the plaintiff.  *See Honeycutt v. State,* 82 S.W.3d 545, 548 (Tex. App.—San

Antonio 2002, pet. ref'd).  Under Texas law, "'[b]odily injury' means physical pain, illness, or any impairment of physical condition."  TEX. PEN. CODE § 1.07(a)(8).  Although section 22.01(a)(1) requires that the defendant "intentionally, knowingly, or recklessly cause[s] bodily injury to another," that section may be violated by the defendant causing such injury "by means other than the actual, attempted, or threatened 'use of physical force against the person of another.'"  *United States v. Villegas-Hernandez,* 468 F.3d 874, 884 (5th Cir. 2006) (emphasis omitted).  Unlike the *Likes* requirement of "serious bodily injury" to recover mental-anguish damages caused by a defendant's negligent conduct, section 22.01(a)(1) of the Texas Penal Code requires that the defendant intentionally, knowingly, or recklessly caused "bodily injury" to the plaintiff.

In this case, Dekelaita has presented competent summary judgment proof of the necessary elements for a claim for assault by physical injury.  The record shows that BP was aware of serious safety problems at the Texas City refinery in the years leading up to the ISOM unit explosion but did not take sufficient steps to address these problems.  A fact issue exists as to whether BP's conduct was reckless.  The record shows that the ISOM unit explosion was a cause of Dekelaita's emotional stress that manifested in the physical symptom of TMJ syndrome.  Dekelaita submitted reports from Dr. Axelrad and Dr. Tarbox diagnosing Dekelaita with posttraumatic stress disorder and depression caused by the explosion.  Dr. Axelrad stated in his affidavit that "[e]motional stress often plays an integral role in causing TMJ [syndrome]."  (Docket Entry No. 45, Ex. 9 at 3).  Dr. Eisen diagnosed Dekelaita with TMJ syndrome, prescribed medication for his anxiety, and recommended a soft diet and over-the-counter pain medication to alleviate his jaw pain.  Although the causal

link between the explosion and Dekelaita's physical injury—the TMJ syndrome—is attenuated, there is insufficient evidence in the record to support summary judgment on this claim.  Dekelaita has shown that a fact issue exists as to whether BP recklessly caused him some bodily injury in the form of TMJ syndrome, caused by the emotional stress he suffered due to the explosion.

BP's summary judgment motion as to this claim is denied.

### 2.   *Assault by Threat*

Citing *Guzman v. State*, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi 1999, no pet.), Dekelaita argues that assault by threat is a "nature of conduct" crime that requires an evaluation of "the acts and culpability of the defendant."  (Docket Entry No. 45 at 10). Dekelaita argues that BP "knew that the refinery would blow up," and that as a result, "there is a fact question regarding whether knowing that the refinery would blow up also meant that BP knowingly caused in [Dekelaita] a reasonable apprehension of imminent bodily injury." (*Id.* at 10).  To support this argument, Dekelaita cites *Johnson v. City of Aiken*, 217 F.3d 839 (4th Cir. 2000), a case in which the Fourth Circuit applied South Carolina law.  In *Johnson*, police officers detonated a distraction device before entering the plaintiff's home without identifying themselves and subduing the home's occupants.  The *Johnson* court affirmed the district court's refusal to grant the city's motion for judgment as a matter of law on the plaintiffs' claim for assault.  Dekelaita argues that the *Johnson* court "recognized that an assault can occur when someone sets off an explosion which puts the plaintiff in fear of life or safety."  (Docket Entry No. 45 at 11).  Dekelaita also relies on *Andrews v. State*, 636 S.W.2d 756 (Tex. App.—Beaumont, no pet.), in which a Texas court found the perpetrator

guilty of assault by threat because he had blown out the victim's car window with a gunshot while the victim was trying to drive away, even though the perpetrator engaged in no verbal threats and the victim had perceived only the aftermath of the gunshot. Dekelaita contends that "[i]f a shattered windshield that scared [a victim] was an assault," then "experiencing one of the worst explosions in this country's history must be too." (Docket Entry No. 45 at 12).

BP distinguishes *Johnson* on the ground that the Fourth Circuit "did not address issues that control this case," but instead examined the doctrine of qualified immunity and whether the police officers' actions were reasonable. BP points out that the *Johnson* court "refrained from deciding whether one act, in itself, could constitute assault by threat." (Docket Entry No. 47 at 9). BP also argues that Dekelaita's reliance on *Andrews* is misplaced because the *Andrews* court noted that a threat is sufficient to establish a claim for assault-by-threat "only when it amounts to 'an offer to use future force.'" (*Id.* at 9). BP emphasizes the absence of any evidence that it made any such threat to Dekelaita.

Dekelaita has failed to raise a fact issue as to the necessary elements for a claim for assault by threat. Relying on an investigation report by the U.S. Chemical Safety and Hazard Investigation Board and the criminal plea agreement that BP signed, Dekelaita argues that BP "knew that the refinery would blow up" and therefore "knowingly caused in the Plaintiff a reasonable apprehension of imminent bodily injury." (*Id.* at 10). Neither the investigation report nor the plea agreement supports the assertion that BP has admitted knowing or intending that the ISOM unit would explode. Dekelaita has failed to raise a fact issue as to whether BP knowingly threatened him with imminent bodily injury.

Dekelaita's reliance on *Johnson* and *Andrews* to support his claim for assault by threat is misplaced. Citing *Johnson*, Dekelaita argues that "an assault can occur when someone sets off an explosion which puts the plaintiff in fear of life or safety." (Docket Entry No. 45 at 11). The facts and law of *Johnson* are distinguishable and do not support Dekelaita's argument. Under South Carolina law, an assault occurs "when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant." *Johnson*, 217 F.3d at *12 (citation omitted). A statutory defense shields police officers from liability for assault if they use "reasonable force." In *Johnson*, police officers detonated a distraction device before entering the plaintiff's home without identifying themselves. The officers entered the home with their weapons drawn. They were armed with submachine guns, handguns, and other weapons. They wore black hoods covering their faces. The defendant city did not dispute that the officers had placed the plaintiffs "in reasonable fear of bodily harm by detonating the distraction device and entering the home with weapons drawn and without identifying themselves." *Id.* at *12. Instead, the city argued it was entitled to judgment as a matter of law because the officers' conduct was "lawful and reasonable." In affirming the district court's denial of the city's motion for judgment as a matter of law on the plaintiff's assault claim, the Fourth Circuit considered not only the explosion of the distraction device, but also the actions and appearance of the officers in conducting a no-knock search, finding that "reasonable minds could disagree as to whether the officers' aggressive tactics" were "reasonably necessary to execute the search warrant." *Id.* at 13–15. The Fourth Circuit considered only the legal sufficiency of the city's defense. Contrary to Dekelaita's assertion,

the *Johnson* court did not hold that an explosion is sufficient to constitute an assault by threat.

Dekelaita also cites the facts of *Andrews*, which involved a shattered windshield that scared a complaining witness.  (Docket Entry No. 45 at 12).  In *Andrews*, the evidence showed that the victim's windshield had been shattered either by a gunshot from the defendant or by a brick thrown by the defendant's brother.  The victim testified that after the windshield shattered, he turned around and saw the defendant pointing a gun at him.  The trial court determined after a bench trial that the defendant had shot at the victim's windshield and that this act was intended to and did communicate a threat.  The parties did not dispute that the defendant had engaged in an intentional or knowing act.  In contrast, Dekelaita points to no evidence showing that BP knew that the ISOM unit would explode or that BP intentionally or knowingly threatened him with imminent bodily injury.

Dekelaita has not shown the necessary elements for a claim for assault by threat.  BP's summary judgment motion as to this claim is granted.

### B.    Dekelaita's Intentional Infliction of Emotional Distress Claim

BP argues that Dekelaita's claim for intentional infliction of emotional distress fails because Dekelaita cannot show that the intended or primary consequence of BP's conduct was to cause emotional distress.  Citing *Standard Fruit and Vegetable Co., Inc. v. Johnson*, 985 S.W.2d 62, 67 (Tex. 1998), BP argues that "intentional infliction of emotional distress claims are meant to 'provide redress only when the tortfeasor desired or anticipated that the plaintiff would suffer severe emotional distress.'" (Docket Entry No. 41 at 9).  BP argues that the primary risk of the ISOM unit explosion was physical injury and death, not emotional

distress, and that Dekelaita has failed to show that emotional distress was the "intended or primary consequence" of BP's conduct.  (*Id.* at 10).

Dekelaita argues that "BP cannot insulate itself from its outrageous, criminal conduct by conclusorily claiming that 'emotional distress' was not the intended consequence of BP's intentionally exploding its refinery." (Docket Entry No. 45 at 13).  Dekelaita argues that his claim for intentional infliction of emotional distress should survive summary judgment so that a jury may "consider whether BP knew with substantial certainty that its actions would probably cause Dekelaita emotional harm." (*Id.* at 13).  Citing *Dixon v. State Farm Mutual Automobile Insurance Co.*, 433 F. Supp. 2d 785, 789 (N.D. Tex. 2006), Dekelaita also contends that intentional infliction of emotional distress "is a 'gap-filler' tort designed to reach egregious circumstances that might otherwise unremedied."  Dekelaita argues that if this court finds that he has no other claims for compensation against BP, "then a 'gap' exists with respect to Dekelaita's right to compensation" that "should be filled by the tort of intentional infliction of emotional distress."  (Docket Entry No. 45 at 14).

In reply, BP argues that Dekelaita has failed to show "how an industrial accident could conceivably be seen as involving an intent to cause emotional injury." (Docket Entry No. 47 at 11).  Because Dekelaita has failed to show all the elements for a claim for intentional infliction of emotional distress, BP argues that he cannot recover on that claim, even as a gap-filler.

To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional

distress; and (4) the resulting emotional distress was severe.  *Johnson*, 985 S.W.2d at 65.

The Texas Supreme Court has held that "intentional infliction of emotional distress is not

available as an independent cause of action unless the actor intends to cause severe emotional

distress or severe emotional distress is the primary risk created by the actor's reckless

conduct."  *Johnson*, 985 S.W.2d at 63; *see also GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605

(Tex. 1999) ("[A] claim for intentional infliction of emotional distress will not lie if

emotional distress is not the intended or primary consequence of the defendant's conduct."

(citing *Johnson*, 985 S.W.2d at 65)).

    Dekelaita has failed to raise a fact issue material to determining whether severe

emotional distress was the intended consequence or the primary risk of BP's reckless

conduct.  As the Texas Supreme Court noted in *Johnson*, an actor must intend to cause severe

emotional distress or severe emotional distress must be the "primary risk" created by the

actor's reckless conduct.  985 S.W.2d at 63.  In *Johnson*, the court found that because "the

primary risk of reckless driving is physical injury rather than emotional distress," the witness

of a car accident could not recover for intentional infliction of emotional distress.  *Johnson*,

985 S.W.2d at 63; *see also Quaker Petroleum Chems. Co., v. Waldrop*, 75 S.W.3d 549, 555

(Tex. App.—San Antonio 2002, no pet.) (finding that the plaintiff's claim for intentional

infliction emotional distress based on the way the defendant chemical company handled a

chemical spill "fails for lack of intentionality" and that to allow recovery "would circumvent

the limitations placed on the recovery of mental anguish damages on a negligence or gross

negligence claim").  Similarly, in this case the primary risk of the chain of events that led to

the explosion of the ISOM unit was physical injury, not emotional distress.  Dekelaita's

claim for intentional infliction of emotional distress fails because emotional distress was not "the intended or primary consequence of the defendant's conduct."  *GTE Sw., Inc.*, 998 S.W.2d at 611 (citing *Standard Fruit & Vegetable*, 985 S.W.2d at 65).

Dekelaita has not met "the exacting requirements" of the tort of intentional infliction of emotional distress.  *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 815 (Tex. 2005).  BP's summary judgment motion is granted as to this claim.

## IV.  Conclusion

BP's summary judgment motion is granted as to the negligence, assault by threat, and intentional infliction of emotional distress claims and denied as to the assault by bodily injury claim.

SIGNED on July 30, 2008, at Houston, Texas.

Lee H. Rosenthal
United States District Judge